Aperion Care, Inc. v. Theresa A. Eagleson Any facts that plausibly would indicate that the residents have designated your clients as their representatives under the regulations? The caption and the footnote give notice that that's how the case is being brought. But you haven't pleaded any facts that they've actually designated. There's no allegation that each of these residents that are listed have executed a document designating your clients as their representatives for Medicaid eligibility purposes. To the extent that that is a flaw with the complaint, that could have been remedied by an amendment to the complaint to add those specific facts. Are you representing in good faith that you have representation designations for all of these people? I am representing in good faith that we have authorized representative designations. Yes, Your Honor, I am representing in good faith. Do they all have the same form, the one that's in the appendix? They have substantially the same form, although the form did change over a couple of years, so the provisions are essentially the same. They all talk about eligibility for Medicaid benefits. I'm sorry, Your Honor? I look at this form and I don't see language that actually authorizes this case. The one that's at appendix 4, page 38 of your appendix. The form authorizes the designated authorized representatives to bring a suit to enforce their benefits. No. Show me the language that you're relying on. That is a form I did not bring up with me. It's in my binder. Well, this is kind of important. Your Honor, it states that I understand and agree that any legal proceedings in regard to my Medicaid eligibility may be pursued by either in my name or by the name of the facility. Yes. It's the phrase in regards to my Medicaid eligibility, which doesn't seem to be in dispute for any of the plaintiffs here. In this case where the MCOs and the agency are withholding benefits, that's a change in eligibility without notice. No, it's not, but okay. They are approved for benefits and they're not receiving their benefits, but they haven't received a notice of termination of benefits. That is different from eligibility, and you're fencing with us to try to play this game to have these consultants step in on behalf of when I assume that there are administrative remedies available to deal with these payment problems, right? Not that I'm aware of, Your Honor. Not aware of any? In this case, because the- I want to ask the defense about that. Thank you, Your Honor. Because there has been no notice, there is nothing to appeal. They're simply not providing the benefits that they're supposed to be providing, and therefore the residents aren't receiving the benefits that they're supposed to be receiving. Not receiving those benefits puts the plaintiffs at risk of being discharged, and that risk of being discharged- Are the nursing homes threatening discharge to these plaintiffs if they receive notice of such threats? If they have not received notice of such threats, they are aware that they could be discharged for lack of the payment. Ms. Watt, let's take a little time with the regulation here, 42 CFR 435.923. In A1, it talks about, in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency. And then you rely on B4, act on behalf of the applicant or beneficiary in all other matters. We have to read those two statutory subsections together, don't we? That's correct, Your Honor. So doesn't that initial statement under A1 concerning the topic, in assisting with an individual's application and renewal of eligibility and other ongoing communications with the agency, doesn't that inform what an authorized representative's scope would be? Your Honor, it does inform, but it's not limited to that. Because if you read the first three parts of B, that they can sign applications, they can do redeterminations, and they receive communications, then if you hold that that authorization is only limited to applications and redeterminations, that renders number four superfluous, obsolete. What else is there? We don't read things to just completely obliterate a provision. Moreover, where that provision is located. It's a general residual clause, but it includes the phrase with the agency. Yes, Your Honor, it does. One of the problems that I have, and I hope you might address, is that in the Federal Rules of Civil Procedure and Constitutional Doctrine, we have pretty elaborate rules for when one person can sue on behalf of another. It seems kind of unusual to say that this regulation issued by Health and Human Services can designate who gets to sue in a civil case in federal court on behalf of someone else. But, Your Honor, it says all other matters with the agency. It doesn't say within the agency. It says with the agency. And litigation is a matter with the agency, specifically here where we're trying to enforce the rights to their Medicaid benefits. And it has been held in banks that these Medicaid recipients have a concrete interest in their benefits. I would like to point out in the provision that the location of this provision isn't controlling. It's under the section that reads eligibility in the states, the District of Columbia, Mariana, Northern Marianas Island, and American Samoa. Then it's within a smaller subsection of eligibility in the states in D.C. But nobody's arguing that people in American Samoa can't have an authorized representative. Moreover, then it's in another subpart, subsection, that's listed as redeterminations. But it clearly says that the authorized representative can do applications. So it's not limited by its position there. The catch-all has room for the authorized representative to protect the rights and the rights to maintain and the right to obtain their benefits. That provision should be interpreted broadly to effectuate the purpose of the Medicaid Act, which is to provide assistance to financially needy and medically needy people. And these residents are financially and medically needy. For that matter, if the authorized representative can't assist the residents, who's going to? These are vulnerable people. They're indigent. They make less than $16,500 a year. All of their income except for a $30 a month personal needs allowance goes to pay for their medical care. They're restricted in nursing homes 24 hours a day. They're not equipped to pursue litigation on their own. If I understand the law, the patient who's actually being denied care has rights, and they can be enforced under Section 1983. And there are loads of cases that you know better than I do in the federal reporters about patients bringing such claims. But I don't see any of those claims being asserted here. Because this case is not about the nursing homes not providing care, it's about the MCOs and the agency not providing the care that they're obligated to. Not providing the payments to the nursing homes in a timely way, right? But again, as I said before, financial assistance and the requirement of care are in the same package. It's medical assistance as under the statute and in case law. Moreover, these resident plaintiffs have suffered an injury in fact. They have the concrete interest in their Medicaid benefits. They have suffered mental anguish. And being at risk of being discharged, it also increases the risks to their health, safety, and well-being. This isn't a risk to which elderly and disabled people should be subjected. Ms. Watt, could I ask you to address one point in your reply brief? At page 18, you wrote that defendants' failure to provide to plaintiff Medicaid beneficiaries the Medicaid benefits for which they have been approved is a deprivation of their constitutional rights under 42 U.S.C. Sections 1396A, A10A, 1396D, A4A, and 1396A, A8. I don't understand the concept of constitutional rights under the statutes. They have a constitutional right. They have a concrete interest in their benefits. Moreover, it has been held that residents, beneficiaries, have a cause of action under prompt payment claim and under the mandate of care and services. So we argue that... I think I understand the argument whether I agree with it as another matter under the statutes. I don't understand the constitutional claim constitutional rights under these statutes. Their constitutional rights must come from some location. What constitutional right? The constitutional right to receive their Medicaid benefits and to receive them promptly. Under the Constitution? They're entitled to... That's property. It's a property interest. Their Medicaid benefits are a property interest, and they're being deprived their property interest without any notice, without explanation, without an opportunity to be heard, without an opportunity to appeal. Why are you not... Why does your case not amount to a confession that the nursing homes are in violation of the law? Because the nursing homes are not in violation of the law. The nursing homes are providing the care that they are required to provide. Which means that the patients are not being heard. The patients... Their rights are being complied with. The patients are harmed by not receiving their benefits and by the anxiety and mental anguish that comes from worrying that not receiving their benefits will end up having them discharged from the place where they get their medical care and they require this 24-hour care. You have not plausibly alleged that they're at risk of being kicked out. You've just alleged a delay in payment to the care providers. We do allege that they are at risk of being discharged, and that is at... Plausibly? Is that plausible? It's a violation of the law to kick them out. I'm sorry? It's a violation of the law to kick them out. I mean, they cannot be denied services. The law requires that they be cared for. If there's a delay in payment, that's an issue between the care providers and the state officials responsible for administering the program. There is a provision under which they can be discharged after a certain number of notice and various things that the nursing homes have to go through to discharge them. Right, but they cannot be denied services because of a delay in payment. Again, that's an issue between the care providers and the administrators of the program. It poses no risk legally, nor can it legally pose any risk to the residents themselves. They can be discharged, but immediately, not tomorrow, not without going through the process. And the anxiety over this threat that they could be discharged and knowing that their benefits have not actually been provided for them, even though those benefits have been awarded to them, causes them additional stress and anxiety. And the stress and anxiety at people of this health level is damaging to their health. Your Honors, I have three minutes left, and I would like to reserve. That's fine. Thank you. Mr. Hamilton. Good morning, and may it please the Court. My name is Steve Hamilton, and I represent seven of the managed care organization defendants in this case. With the Court's permission, I'm going to be focusing my arguments on the standing issue and the managed care organization defendants' arguments, and the State will be addressing their Eleventh Amendment and Article III standing issues in their briefs. Based on the Court's questioning, it's clear that at least the issues are honed in on. The plaintiffs in this case are trying to turn what is otherwise a straightforward issue between the providers and the managed care organizations into a civil rights and discrimination case. And they're doing that by trying to rely upon the regulation that they cite to say that there are authorized representatives to assert the residents' purported claims. The District Court, however, correctly looked at the plain language of the regulation to say that when you read the plain language as a whole, it doesn't permit the authorized representative standing in their own right to assert the residents' claims. Now, as we know, standing is a fundamental concept necessary to bring any lawsuit that includes both the Article III considerations and the prudential considerations, a key one of which is that a litigant must assert his, her, or its own rights and not the rights of a third party. Here, the plaintiffs say we satisfy that prudential consideration because of the regulation. But, again, the District Court correctly looked at the entirety of the language in the regulation to say that that's not true. And this is because when you look at the language of the regulation, including, as Judge Brennan said, in Subpart A.1, it limits what the authorized representative may do to two areas, really. It's issues of eligibility and communications with the state agency. Subpart B, then, provides specific examples or actions that the authorized representative may take as it relates to eligibility, signing the application, completing the renewal form, and as it relates to communications with the agency, receive notices from the agency, and act on behalf of the beneficiary in all that matters with the agency. A representative who holds a guardianship or a power of attorney would have full plenary authority to act for a resident. Absolutely. And what we want to point out here is that it's not necessary to read this regulation as granting standing on behalf of the authorized representative. As this Court has pointed out through its questioning, a resident always has the right to assert his or her own claims if they have a viable cause of action, whether it's directly or through a next best friend, as routinely happens, or through a court-appointed guardian or power of attorney or some other process that's available to the resident. And that's important because those processes contain protections for the resident or the beneficiary to ensure that that representative is acting solely within the best interest of the beneficiary itself. And I believe Judge Hamilton said there's a litany of cases where residents do this all the time. For instance, bringing in their own name in the Banks case, in the Beltran case in front of the Ninth Circuit, in the Bontrager case in front of this Court, through the next best friend. There's currently a case pending before this Court, Cosby Norwood, in the Bertrand case. There are litanies of cases where residents pursue the appropriate route. What the District Court concluded here appropriately is that the regulation doesn't supplant or satisfy the prudential considerations to allow the authorized representative to assert the rights of the third party. Mr. Hamilton, one way to look at this case is as a kind of hail Mary, a legal hail Mary by desperate care providers. I don't know whether that's accurate or not, but they say they're in deep trouble because your clients are not making timely payments. What processes and remedies are available apart from this unusual case to resolve those issues? Sure. So in the managed care context, what happens is that the managed care organizations either enter into contracts with the providers themselves, and that's usually the case. This is a contractual relationship. To the extent there isn't a contract, which sometimes occurs, there can be what we call single case agreements, where they enter into a please take care of this one person. We don't have a larger contract, but we will take care of it for this particular issue. Or if there's no agreement at all or other arrangement, even under the statutes themselves, contemplate and require the managed care organizations to directly pay the providers. So under those contracts, is the remedy for failing to make timely payments a suit in state court? Is there some sort of alternative dispute resolution? Is there an administrative process? Sure. So it's both either state court if there is no ADR provision. Many of the contracts do have arbitration provisions. But those are the traditional, and it happens every day, there's lawsuits between providers and contracted managed care organizations in the Medicaid space that occur in state court or arbitration. Otherwise, to the extent that there is a denial of benefits that actually is affecting the beneficiary, the enrollee, there is an entire administrative process that's available through the appeals process and then through state court external review. I'm sorry, state law external review. So there are absolutely 100% remedies that are available that could be appropriately pursued. I take it those don't have anything equivalent to 42 U.S.C. section 1988 and its fee provisions? They do not, Judge. That is correct. In fact, there may be a contractual fee shifting provision, but nothing under state law. And I take it that the administrative remedies for situations in which a resident is actually being denied care of some sort would cover that kind of situation. It doesn't cover, or do the administrative remedies cover, just a generic delayed payment claim? They do not generally cover what I would call a payment dispute between the provider and the managed care organization. It would cover something like if a resident was being denied a certain form of treatment because of a determination that the program doesn't pay for that kind of treatment. Correct. Okay. That is exactly right. So in sum, not only did the district court correctly read the plain language of the regulation, it's not necessary to extend the regulations allowing these authorized representatives standing in their own right to assert the claims of the beneficiaries. I want to address one particular comment that Pelitz Counsel made about the resident plaintiffs. I think this court is in agreement that the facilities are actually the plaintiff's at issue, but if there's any doubt, I would point the court to docket number 64 in the record, which is Appearing Care's Rule 21 motion to withdraw. And in that motion, they expressly state that Appearing Care is a plaintiff. And more importantly, they say Appearing Care and one of my clients, Defendant Community Care Alliance of Illinois, resolved their dispute and entered into a settlement agreement. And they asked the court, which the district court did, to dismiss the case. That raises additional practical considerations about trying to interpret the regulation as allowing an authorized representative standing to sue. For instance, in this particular case, who are these attorneys representing? Is it the plaintiffs or the residents? Who settled that dispute? Is it the facilities or the residents? What's the res judicata effect of that settlement? Does it affect the residents' rights? It's just another example of why we don't need to extend the plain language of the regulation, as the plaintiffs suggest. And I understood that the plaintiff organizations are not actually the care facilities themselves, but they're consultants, essentially, for financial and business matters. That's correct. They're alleged to be consultants. It's unclear if some of them perhaps also are facilities, because there's no allegations suggesting that. But the plaintiffs themselves do allege to be consultants to the facilities rendering care. The last thing I would like to point out is that, obviously, this court can affirm on any basis supported in the record. We do have substantial 12v6 arguments addressing the merits of the underlying claims. I'm not going to go into detail on those, but I'd like to point out three things, one of which is that there are no allegations of a valid authorization. As this court pointed out, even assuming that the authorization at issue is something this court should consider, it's expressly limited to eligibility issues, which is not at issue in this case. The second thing I'd like to point out is that the foundation of all these claims is, in fact, the alleged violation of the payment procedures statute, which is what we call it. And that's at 1396AA37, which the courts, at least who addressed it, found that there's no private right of action under that statute, and expressly does not apply to long-term care facilities claims at issue in this case. And lastly, for four of the managed care defendants, Aetna, Cigna, Humana, and Community Care Alliance of Illinois, they're no longer participants in the Medicaid program. So plaintiff's request, as they say, is only for prospective injunctive relief, but the cessation of their participation in the program makes it impractical or impossible to grant injunctive relief. Why did they pull out of the program? There was a new RFP that was issued effective January 1, 2018, and they did not win the RFP. So that was for Illinois? Correct. Okay, thank you. If there's no further questions, I'd like to turn it over to the state. Thank you. Ms. Hunger. Good morning, and may it please the court. Deputy Solicitor General Sarah Hunger, on behalf of the state defendant, Teresa Eagleson. I'd like to first note that all of the arguments related to the regulation and standing apply with equal force to the state defendant. But I would also like to address the three additional independent grounds for affirmance with respect to the state defendant. The first of those is the 11th Amendment. The crux of the plaintiff's claim here, as we just heard, is that they are seeking payment for past services rendered. To the extent they are seeking that payment from the state, that would be barred by the 11th Amendment, even if it is couched in a prospective or declaratory or injunctive relief count in their complaint. What if it were phrased in terms of an injunction addressing future payments for future care provided? That's not what they're alleging here. In the Fourth Circuit case, Wacomaco, the Fourth Circuit addressed a similar issue, and what they said was that the claims at issue were for past services rendered. It's barred by the 11th Amendment. To the extent you could have an injunction with respect to future payments, that would be barred by Article III standing concerns because the residents do not have any injury in fact for the denial of or not the denial of, for untimely payments. Separate problems, but not in the 11th Amendment. Right. You would still run into a problem. And I would like to note on that point, there are federal and state protections such that the residents cannot be kicked out of the nursing home for a third party's failure to pay. Certainly if they're failing to pay their share or if they are not providing the paperwork, then that would provide a separate grounds for removal. But if it's simply that the MCO defendants or the state or the third party is not paying, under federal and state law, they cannot be kicked out, and that's what they have alleged in their complaint. So we would assert as a second ground for affirmance and perhaps a threshold question for the entire case is that there's no Article III standing here. The plaintiffs have not alleged an injury in fact, and that's been confirmed here at the argument today. Finally, the third ground for affirmance is that plaintiffs have failed to state a claim for many of the same reasons that I've just articulated. They are not being denied any care or services, and they have, again, just conceded that point here today. So they cannot state a claim under 8A or A10A, which relates to the provision of care and services. The other provision, 37A, which there's no private right of action under, does relate to payment. So they're trying to shoehorn the 37A claims into 8 and 10. Separately, there's no ADA or Rehabilitation Act violation here because they have not alleged that they are qualified individuals with a disability or that any of the untimely payments were motivated by the fact that they might be individuals with a disability. There's also no procedural due process claim because, as we have discussed, they do not have a property interest in the payments. If the court has no further questions, we ask that it affirm the district court's dismissal. I'll just ask one theoretical question about whether we ought to be thinking about this in terms of standing as opposed to the real parties in interest and whether that makes a difference for your purposes or ours. Right. Well, I think the threshold question is usually the Article III standing, which we would submit they do not satisfy. I think the next question is whether they've satisfied the prudential standing considerations, and here we would submit also that they have not because, as you pointed out earlier, Your Honor, the federal regulation that governs intra-agency proceedings cannot confer standing in federal court. They have to otherwise satisfy Rule 17A or a third-party standing doctrine, which they have not done. After that, I think it gets into, for the state, Eleventh Amendment and then probably failure to state a claim. Thank you. Thank you. Ms. Watt. I just want to respond to a few of the things. First of all, the authorized representative isn't required to be the facility that does the care. There is no specification that requires it to be the facility. It can be anyone who is assigned. As far as the Eleventh Amendment argument, the plaintiffs aren't seeking a payment for past due benefits. They're not seeking any cash amount. They're not seeking any specific amount. They're seeking, as Your Honor said, as Judge Hamilton said, prospective relief for the agency and the MCOs to bring their processes into compliance with the prompt payment requirement. I thought you wanted cash, at least from the MCOs. No, in federal court, we do not want cash. That would violate the Eleventh Amendment. From the MCOs? In the posture of this case brought under, I think, 1983 and the ADA, I don't believe that we could ask for a monetary claim. Okay. To the extent that the complaint does request any monetary benefits, the proper remedy would have been to strike those specific requests for relief, not to dismiss the complaint as a whole. Wicomico is a different case, Your Honors. In that case, there was no argument that those residents were receiving current benefits, which is why the court held what they held, that the residents were either deceased or were currently receiving benefits. The argument was really over whether or not nonpayment of past benefits still constitutes an ongoing harm, which the court found that because they're receiving benefits, that past benefits is not an actionable claim. Here, the benefits are still being withheld from these residents. Just to clarify, your complaint does seek compensatory and punitive damages. Punitive damages are allowed under the Rehabilitation Act, and to the extent that compensatory damages were sought inappropriately or in error, those claims should be stricken. Those requests for relief should be stricken, not specifically the cause of action or the claims. The plaintiff's request that the court hold that the authorized representatives do have standing to bring claims to ensure receipt of their Medicaid benefits and remand this case to the district court for further proceedings. Alternatively, plaintiff's request that the court remand this case to the district court to allow for joinder or replacement or gratification by the named residents. Plaintiffs did request leave to amend in Document 41 on page 32. To the extent that any claims have not been adequately pled or that any of the allegations are confusing, the plaintiff's request that the court remand to the district court would leave to amend to curse those defense. Thank you. Our thanks to all counsel. The case is taken under advisement.